# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CCA OF TENNESSEE, LLC, a Tennessee Limited liability company doing business in California,<br><br>　　　　　　　　　　　　Plaintiff,<br>vs.<br>DEPARTMENT OF VETERANS AFFAIRS, a federal agency; ERIK K. SHINSEKI, in his official capacity as the Secretary of the Department of Veterans Affairs; ERIC LAZARE, an individual in his official capacity; KAREN SCHOENFELD-SMITH, an individual in her official capacity,<br><br>　　　　　　　　　　　　Defendants. | CASE NO. 09cv2442 WQH (CAB)<br><br>**ORDER** |

HAYES, Judge:

　　The matters before the Court are the Motion for Summary Judgment and Permanent Injunction, filed by Plaintiff CCA of Tennessee, LLC ("CCA") ("CCA's Motion") (Doc. # 9), and the Motion to Dismiss Complaint Or, in the Alternative, for Summary Judgment, filed by Defendants Department of Veterans Affairs ("VA"), Erik K. Shinseki, Eric LaZare, and Karen Schoenfeld-Smith ("VA Motion") (Doc. # 13).

**I.　Background**

　　On November 2, 2009, CCA initiated this action by filing a Complaint in this Court. (Doc. # 1). Pursuant to the Administrative Procedures Act ("APA"), CCA seeks review of a

final decision by the VA denying CCA's request to depose a VA employee, Defendant Karen Schoenfeld-Smith ("Dr. Schoenfeld-Smith"), in a separate state court action.

### A. Allegations of the Complaint

CCA is a private company that operates and manages a correctional facility in the County of San Diego, California. (Doc. #1 ¶ 3). The VA is a United States Government agency which operates the San Diego Veterans Center. (Doc. # 1 ¶ 4). This case arises from a state court action (the "Underlying Action") in which Enrique Velez, a former correctional officer of CCA's San Diego Correctional Facility ("the Facility"), sued CCA in connection with his termination from CCA. (Doc. # 1 ¶ 8). In December 2006, while Velez was on duty, an inmate in the Facility assaulted another inmate. (Doc. # 1 ¶ 9). CCA placed Velez on administrative leave pending an investigation into the events surrounding the assault and subsequently terminated Velez from his employment with CCA. (Doc. # 1 ¶ 9–10).

In the Underlying Action against CCA, Velez alleged the following causes of action:

> (1) wrongful termination in violation of public policy; (2) violation of California Labor Code Section 6310; (3) interference with protected leave under California Family Rights Act; (4) disability discrimination; (5) failure to accommodate; (6) failure to engage in interactive process; (7) retaliation; (8) defamation; and (9) intentional infliction of emotional distress.

(Doc. # 1 ¶ 11). Velez's alleged disability is post-traumatic stress disorder ("PTSD"), "a disability he claims he suffered while returning from his military service in the Gulf War." (Doc. # 1 ¶ 12). In the Underlying Action, Velez alleges:

> (a) CCA's conduct exacerbated his PTSD symptoms; (b) as a direct result of the conduct of CCA, he has suffered severe emotional distress including, but not limited to, fright, nervousness, grief, anxiety, worry, shock, humiliation, and indignity, as well as physical pain; (c) Velez suffered from post traumatic stress disorder prior to the events alleged in the complaint; and (d) CCA's decision to deny Velez medical leave and/or reasonable accommodations on or about November 28, 2006 was discriminatory, based on his disability, namely post traumatic stress disorder.

(Doc. # 1 ¶ 13). "Based on his allegations and claims, Velez has put his mental and medical conditions at issue" in the Underlying Action. (Doc. # 1 ¶ 14).

Dr. Schoenfeld-Smith, a clinical psychologist at the San Diego Veterans Center, began treating Velez on September 21, 2006, and since that date, has treated Velez "at least 72 times regarding his PTSD and emotional distress." (Doc. # 1 ¶ 15). Velez testified in a deposition

1 in the Underlying Action that he "sees counselors at the VA hospital, including Dr.
2 Schoenfeld-Smith, for a hazing incident that occurred when he was returning from the Gulf
3 War, his PTSD and resulting emotional distress." (Doc. # 1 ¶ 16).

4 "In order to test the truth of [Velez's] allegations of causation and damages and to
5 discover other factors in Velez's life that contributed, and may, in fact, have been the sole or
6 contributing causes of Velez's alleged emotional injuries, CCA sought his medical records
7 from the VA and deposition testimony from Dr. Schoenfeld-Smith." (Doc. # 1 ¶ 17).

8 On May 13, 2009, CCA filed in the Underlying Action a motion to compel Velez to
9 sign authorization forms for release of his medical records from the VA's San Diego Veterans
10 Center. (Doc. # 1 ¶ 18). "In support of Velez's opposition to CCA's motion to compel, Dr.
11 Schoenfeld-Smith stated in a sworn declaration that one of the factors that can exacerbate
12 Velez's PTSD symptoms is 'when large bureaucracy runs ineffectively and the individual is
13 highly scrutinized.'" (Doc. # 1 ¶ 19).

14 "On June 5, 2009, the court in the Underlying Action ruled in favor of CCA and found
15 there was a compelling need for the information concerning Velez's mental condition;
16 otherwise, as the court stated, it would 'unfairly hamstring [CCA] in defending against
17 [Velez]'s claim for emotional distress damages' and CCA would not be able to 'assess the
18 conclusions reached by [Velez]'s medical providers regarding [Velez]'s diagnosis and the
19 severity of the pre-existing emotional distress.'" (Doc. # 1 ¶ 20). Dr. Schoenfeld-Smith
20 complied with the court's order by producing "records and files of her counseling sessions with
21 Velez, including her handwritten notes." (Doc. # 1 ¶ 21).

22 On September 22, 2009, "CCA sent a *Touhy* letter requesting that the VA produce for
23 deposition Dr. Schoenfeld-Smith pursuant to Title 38 of the Code of Federal Regulations ...
24 § 14.800, *et seq*." (Doc. # 1 ¶ 22; *see also* Doc. # 1, Ex. B). CCA also issued a subpoena for
25 Dr. Schoenfeld-Smith's deposition testimony. (Doc. # 1 ¶ 23).

26 On September 24, 2009, Eric LaZare, an attorney with the Regional Counsel's Office
27 of the VA, sent CCA's counsel a letter requesting that CCA "voluntarily withdraw its
28 deposition subpoena" and stating that "[t]he County of San Diego Superior Court does not

1 have jurisdiction to compel the production of testimony because Federal regulations prohibit this action and Agency approval is not granted." (Doc. # 1, Ex. C). On September 29, 2009, LaZare sent CCA's counsel another letter, stating that the VA "has considered and hereby denies your *Touhy* request." (Doc. # 1, Ex. C).

"On September 29, 2009, counsel for CCA discussed CCA's *Touhy* request and subpoena for the deposition testimony of Dr. Schoenfeld-Smith with LaZare.... During this discussion, LaZare did not provide any reason as to why CCA's request was denied other than stating that a federal court is the only judicial entity with the authority to compel the testimony of VA employees and [LaZare] confirmed that the VA would not produce Dr. Schoenfeld-Smith for deposition." (Doc. # 1 ¶¶ 26-27).

In the Complaint's sole cause of action, CCA alleges that the VA's refusal to permit the deposition of Dr. Schoenfeld-Smith is "arbitrary, capricious and an abuse of discretion." (Doc. # 1 ¶ 39). CCA alleges that "[w]ithout the deposition testimony of Dr. Scheonfeld-Smith, CCA cannot meaningfully respond to Velez's allegations of injuries suffered as a result of CCA's alleged conduct. Dr. Scheonfeld-Smith's testimony is also necessary to authenticate and decipher her handwritten notes that she produced in the Underlying Action." (Doc. # 1 ¶ 44). CCA requests that this Court, pursuant to the APA, "[e]nter appropriate declaratory relief to ensure that the VA provides to CCA authorization to depose Dr. Schoenfeld-Smith ... [and] that Dr. Schoenfeld-Smith must be made available for deposition ... [and] a preliminary and permanent injunction enjoining the VA from preventing CCA from conducting the deposition of Dr. Schoenfeld-Smith." (Doc. # 1 at 9).

### B.   Cross Motions for Summary Judgment

On December 22, 2009, CCA filed its Motion, seeking an order from the Court setting aside the VA's decision to refuse CCA's request to depose Dr. Schoenfeld-Smith. (Doc. # 9). CCA contends that the VA's decision is "an arbitrary and capricious agency action that should be set aside" because "the testimony CCA seeks from Dr. Schoenfeld-Smith is highly probative and essential to its defense in the Underlying Action" and "the reasons proffered by the VA for blocking the deposition are devoid of specific and factually-supported

justifications." (Doc. # 9-1 at 8). CCA contends:

> On the one hand, the VA generically and formulaically objects to the testimony of Dr. Schoenfeld-Smith that has been subpoenaed. On the other hand, the VA has already produced Velez's medical records. Likewise, Dr. Schoenfeld-Smith also availed herself in the Underlying Action by submitting a sworn declaration regarding her opinions and conclusions as to Velez's mental state. Thus, it is an unsustainable contradiction that the VA could produce Velez's records and allow Dr. Schoenfeld-Smith to offer a sworn statement in support of Velez's position in the Underlying Action, but refuse to permit her to be deposed in the instant matter.

(Doc. # 9-1 at 9 (citations omitted)). CCA contends:

> [T]he deposition of Dr. Schoenfeld-Smith can be done with little burden on the agency. In this regard, CCA will take the deposition of Dr. Schoenfeld-Smith at a time and location convenient to her. CCA is only seeking the VA Witness' testimony as to factual information that she knows first-hand. The scope of information that will be covered at the deposition will be bounded by the limits of the VA Witness' personal knowledge.... The VA cannot refuse to authorize the testimony of the VA Witness merely because the agency might have to expend some effort in connection with her deposition. Otherwise, *every* request to authorize discovery made to any federal agency could be rejected on these grounds.

(Doc. # 9-1 at 10-11).

On January 4, 2010, the VA filed its Motion, seeking an order from the Court affirming the VA's "entirely reasonable" decision to deny CCA's request for Dr. Schoenfeld-Smith's deposition. (Doc. # 13 at 1). The VA contends that it "declined to allow the deposition of Dr. Schoenfeld-Smith for a number of reasons based on considerations set forth in the pertinent VA regulations." (Doc. # 13-1 at 3). The VA submitted a declaration from LaZare, who, "on behalf of the VA..., declined to allow the deposition" because:

> [P]roducing [Dr. Schoenfeld-Smith] for deposition would take undue time away from her conduct of official business.... She and her staff handle over seven thousand patients per year. Approximately 900 of those appointments are with her. In addition to seeing patients, Dr. Schoenfeld-Smith supervises six other clinicians. There are no other supervisors on site. Additionally, Dr. Schoenfeld-Smith is only one of two psychologists at the [San Diego Veterans Center]....
>
> [T]he VA determined that producing Dr. Schoenfeld-Smith for deposition would expend the VA's resources for private litigation, as Dr. Schoenfeld-Smith's duty time is paid for by the United States. Although Plaintiff speculates that the deposition of Dr. Schoenfeld-Smith probably would not take more than a few hours, it is doubtful that this estimate is accurate. In particular, Plaintiff alleges that Velez has been a patient of Dr. Schoenfeld-Smith for over three years and has seen her at least 72 times. Due to the extensive treatment history, and the fact that Velez' attorney also will examine Dr. Schoenfeld-Smith, it is likely the deposition will last longer than three hours. Dr. Schoenfeld-Smith also will need to spend time preparing for the deposition with the assistance of counsel.

> Additionally, CCA may attempt to call her as a witness at trial. This will entail a further expenditure of VA resources....
>
> [A]llowing the deposition of Dr. Schoenfeld-Smith in private litigation not involving the VA would take away from time Dr. Schoenfeld-Smith spends treating other veterans who need psychological counseling.... [T]he VA also took into account that if it were to freely allow its doctors to provide testimony upon request of private litigants in state court cases..., the cumulative effect of such a policy would diminish its ability to provide medical services to veterans....
>
> [The VA] *Touhy* regulations generally prohibit employees from rendering opinion or expert testimony. Furthermore CCA may adequately evaluate Velez' alleged psychological injuries without the testimony of Dr. Schoenfeld-Smith. CCA can explore the nature and extent of Velez' emotional distress claims through his deposition, ... and other methods of pre-trial discovery in the state case. Moreover, CCA can hire a psychiatrist to serve as an expert witness who can render opinions unlike Dr. Schoenfeld-Smith. Under state court procedures, the psychiatrist will have an opportunity to examine Velez and evaluate his alleged psychological injuries. The psychiatrist also will have an opportunity to review Dr. Schoenfeld-Smith's records pertaining to Velez as the records have already been produced to CCA.

(Doc. # 13-2 at 3-5) (citations omitted). LaZare also stated: "It is my understanding that Dr. Schoenfeld-Smith submitted a declaration used in the state court civil case. This declaration was not authorized by the VA. Additionally, Dr. Schoenfeld-Smith did not notify me or anyone in my office of any request she received to prepare the declaration as she should have done under established VA procedures and the agency's *Touhy* regulations." (Doc. # 13-2 at 5 n.1).

On January 22, 2010, Plaintiff filed an opposition to the VA's Motion, contending "the VA's refusal to authorize this deposition was arbitrary and capricious" because "the requested testimony is relevant, not able to be obtained through adequate alternative means, and not unduly burdensome." (Doc. # 18 at 5). Plaintiff contends the VA "offers nothing more than pretextual justifications for its decision," and contends that "there is no threat of a lengthy, time-consuming deposition that will distract Dr. Schoenfeld-Smith from her duties since CCA estimates that Dr. Schoenfeld-Smith's deposition will only take a few hours." (Doc. # 18 at 7, 15).

On April 22, 2010, the Court conducted oral argument on the pending motions.

## II.   Summary Judgment Standard of Review

The parties have submitted evidence in support of, and in opposition to, the pending

1 motions. Accordingly, the Court will decide the pending motions according to the standard
2 of review applicable to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d) ("If ...
3 matters outside the pleadings are presented to and not excluded by the court, the motion must
4 be treated as one for summary judgment under Rule 56.").

5 Summary judgment is proper when the "pleadings, depositions, answers to
6 interrogatories, and admissions on file, together with the affidavits, if any, show that there is
7 no genuine issue as to any material fact and that the moving party is entitled to judgment as
8 a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is "genuine" only if there is sufficient
9 evidence for a reasonable fact finder to find for the non-moving party. *See Anderson v. Liberty*
10 *Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of
11 the case. *See id.* at 248. "In ruling on a motion for summary judgment, the nonmoving party's
12 evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor."
13 *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quotation omitted).

14 **III.   Discussion**

15 CCA filed this action pursuant to the APA, 5 U.S.C. § 701 *et seq.*, because it alleges the
16 "VA's refusal to allow its employee to be deposed is arbitrary, capricious, and an abuse of
17 discretion." (Doc. # 1 ¶ 28). This is the proper procedure for CCA to seek judicial review of
18 the VA decision. *See Kwan Fai Mak v. F.B.I.*, 252 F.3d 1089, 1092-93 (9th Cir. 2001); *In re*
19 *Boeh*, 25 F.3d 761, 764 (9th Cir. 1994); *see also Cabral v. U.S. Dep't of Justice*, 587 F.3d 13,
20 22-23 (1st Cir. 2009) (quotation omitted) ("To obtain information from a federal agency, a
21 party must file a request pursuant to the agency's regulations, and may seek judicial review
22 only under the APA.").

23 **A.   APA Standard of Review**

24 In an action brought pursuant to the APA, a reviewing court may "hold unlawful and
25 set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse
26 of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "It is well
27 established that once an agency has taken final agency action under the APA, a reviewing
28 court analyzes that decision under the 'arbitrary and capricious' standard of review." *Mt. St.*

*Helens Mining & Recovery Ltd. P'ship v. U.S.*, 384 F.3d 721, 727 (9th Cir. 2004) (citations omitted). The parties agree that the VA's decision to deny Plaintiffs' request to depose Dr. Schoenfeld-Smith constitutes a final agency action, subject to review under the APA's "arbitrary and capricious" standard of review. (Doc. # 9-1 at 7; Doc. # 13-1 at 7–8).

"Under the arbitrary and capricious standard, a reviewing court must determine whether an agency's decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Mt. St. Helens Mining & Recovery Ltd. P'ship.*, 384 F.3d at 728 (citation omitted). "This standard is narrow and [a reviewing court] may not substitute [its] judgment for that of the agency. Applying the arbitrary and capricious standard, this court must determine whether the agency articulated a rational connection between the facts and the choice made." *Id*. (citations omitted). "This standard of review is highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *Ranchers Cattlemen Action Legal Fund v. U.S. Dep't of Agric.*, 499 F.3d 1108, 1115 (9th Cir. 2007) (quotation omitted). "In its paradigmatic statement of this standard, the Supreme Court explained that an agency violates the APA if it has 'relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Id*. (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

### B. *Touhy* Regulations

The head of a federal agency may promulgate procedural regulations governing "the conduct of its employees, the distribution and performance of its business, and the custody, use and preservation of its records, papers and property." 5 U.S.C. § 301. The authority for such regulations was upheld by the Supreme Court in *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) (upholding a regulation issued by the Attorney General restricting testimony by employees of the Justice Department). "*Touhy* is part of an unbroken line of authority which directly supports [the] contention that a federal employee may not be compelled to obey a

subpoena contrary to his federal employer's instructions under valid agency regulations." *Boron Oil Co. v. Downie*, 873 F.2d 67, 69 (4th Cir. 1989); *see also Swett v. Schenk*, 792 F.2d 1447, 1451-52 (9th Cir. 1986) (holding that a *Touhy* regulation "has the force of law").

The VA has promulgated *Touhy* regulations governing its employees' testimony. *See* 38 C.F.R. § 14.800–14.810. These regulations provide:

> VA personnel may provide testimony or produce VA records in legal proceedings covered by §§ 14.800 through 14.810 only as authorized in accordance with these regulations. In determining whether to authorize testimony or the production of records, the determining official will consider the effect in this case, as well as in future cases generally, based on the factors set forth in § 14.804, which testifying or producing records not available for public disclosure will have on the ability of the agency or VA personnel to perform their official duties.

38 C.F.R. § 14.803(a). The applicable regulations provide that in deciding whether to authorize the testimony of VA personnel, VA personnel responsible for making the decision should consider the following types of factors:

> (a) The need to avoid spending the time and money of the United States for private purposes and to conserve the time of VA personnel for conducting their official duties concerning servicing the Nation's veteran population;
>
> (b) How the testimony or production of records would assist VA in performing its statutory duties; ...
>
> (i) Whether such ... testimony reasonably could be expected to result in the appearance of VA or the Federal government favoring one litigant over another; ...
>
> (l) The need to minimize VA's possible involvement in issues unrelated to its mission; ...
>
> (o) Other matters or concerns presented for consideration in making the decision.

38 C.F.R. § 14.804.

Review of an agency decision pursuant to the APA is "narrow." *Mt. St. Helens Mining & Recovery Ltd. P'ship*, 384 F.3d at 728. The "APA does not empower the district court to conduct a de novo review of the administrative decision and order the agency to reach a particular result." *Id*. (citations omitted). "When an agency is not a party to an action, its choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources. ... '[F]ederal judges–who have no

constituency–have a duty to respect legitimate policy choices made by those who do ... [because] [o]ur Constitution vests such responsibilities in the political branches.'" *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 278 (4th Cir. 1999) (quoting *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 866 (1984)). This Court is limited to determining whether the VA's decision was "based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Mt. St. Helens Mining & Recovery Ltd. P'ship*, 384 F.3d at 728 (citations omitted).

"Judicial review of an agency decision typically focuses on the administrative record in existence at the time of the decision and does not encompass any part of the record that is made initially in the reviewing court. Review may, however, be expanded beyond the record if necessary to explain agency decisions." *Southwest Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996) (citations omitted). "Supplementation [of the administrative record] is permitted ... if necessary to determine whether the agency has considered all relevant factors and has explained its decision...." *Midwater Trawlers Coop. v. Dep't of Commerce*, 393 F.3d 994, 1007 (9th Cir. 2004) (quotation omitted); *see also Camp v. Pitts*, 411 U.S. 138, 143 (1973) (holding that a court may "obtain from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary").

In the present case, the administrative record consists of three letters: (1) CCA's letter to the VA requesting authorization to depose Dr. Schoenfeld-Smith, (2) the VA's letter to CCA requesting CCA to withdraw its deposition subpoena, and (3) the VA's letter to CCA denying CCA's *Touhy* request. (Doc. # 1, Exs. D, E, F). In support of its Motion, the VA submitted an affidavit from LaZare, the VA official who evaluated CCA's *Touhy* request. (Doc. # 13-2). The Court concludes that it is appropriate under the facts of this case for the administrative record to be supplemented with the LaZare affidavit. *See Midwater Trawlers Coop.*, 393 F.3d at 1007.

The reasons given by the VA to support its denial of CCA's request include the relevant factors that the *Touhy* regulations direct the agency to consider. The VA based its decision on

factors (a), (b), (i), (l) and (o) in 38 C.F.R. § 14.804.  (Doc. # 13-2 at 3-5).  After examining the arguments of the parties and the evidence in the record, the Court concludes that the VA's decision was based on a consideration of the relevant factors.

The Court further concludes that the VA has articulated a rational connection between the facts and the choice made, and the VA did not commit a clear error of judgment.  Given the specialized nature of Dr. Schoenfeld-Smith's work, her heavy patient load, the lack of substitute staff psychologists, and CCA's ability to conduct an independent mental examination of Velez in the Underlying Action, the VA's conclusions that allowing CCA to depose Dr. Schoenfeld-Smith would disrupt her official duties, compromise the agency's impartiality, and have a potential cumulative effect of wasting a significant amount of agency time and money on issues unrelated to the agency's mission were not arbitrary and capricious. *See Davis Enters. v. Envtl. Prot. Agency*, 877 F.2d 1181, 1187 (3d Cir. 1989) ("Notwithstanding Appellants' argument that Erdman's deposition, which they have volunteered to take at his office, would only take a minimal amount of time, there is no guarantee that cross-examination would not be lengthy.... Moreover, Appellants' argument about the minimal burden in this case fails to take into account the EPA's legitimate concern with the potential cumulative effect of granting such requests.... Its concern about the effects of proliferation of testimony by its employees is within the penumbra of reasonable judgmental decisions it may make."); *City of Ashland v. Schaefer*, Civ. No. 08-3048, 2008 WL 2944681, at *6 (D. Or., July 31, 2008) ("[T]he USDA is in the best position to determine the time and effort involved in preparing the employees for their depositions and testimony and how that time commitment might hamper their ability to fulfill their duties.  Thus, the Court cannot find that the USDA's decision regarding the testimony's undue interference with the employees' [duties] was unreasonable or irrational."); *Bobreski v. U.S. Envtl. Prot. Agency*, 284 F. Supp. 2d 67, 80 (D.D.C. 2003) ("The plaintiff may not agree with EPA's assessment and its denial of the plaintiff's request.  But neither the plaintiff nor this court may substitute their judgment for that of the EPA.  Because EPA made a rational decision in accordance with its *Touhy* regulations, the court determines that EPA's denial of the plaintiff's request for the inspector's

testimony was not arbitrary and capricious."); *cf. U.S. v. Fleet Mgmt. Ltd.*, Crim. No. 07-279, 2008 WL 1848102, at *4 (E.D. Pa., Apr. 24, 2008) (holding it was an abuse of discretion for the DHS to refuse to provide a witness who was "critical to the[] defense" in a *criminal* case). The VA's decision was not arbitrary and capricious or an abuse of discretion and, accordingly, it is upheld by the Court.

**IV. Conclusion**

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment and Permanent Injunction is **DENIED** (Doc. # 9), and Defendants' Motion to Dismiss Or, in the Alternative, for Summary Judgment is **GRANTED** (Doc. # 13). The Clerk of the Court shall enter judgment in favor of Defendants and against Plaintiff.

DATED: April 27, 2010

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge